UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
UNITED STATES *ex rel.*             )
ZIAD AKL, M.D.,                    )
                                   )
            Plaintiff,             )
                                   )  Civ. Action No. 12-03 (EGS)
    v.                             )
                                   )
VIRGINIA HOSPITAL CENTER-          )
ARLINGTON HEALTH SYSTEM            )
                                   )
            Defendant.             )
_____)

**MEMORANDUM OPINION**

Relator-Plaintiff Ziad Akl, M.D., brings a *qui tam* action against the Virginia Hospital Center-Arlington Health System ("Defendant" or "VHC" or the "Hospital") for allegedly filing false cost reports with the United States Government in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729. The United States has declined to intervene. *See* Notice of Election to Decline Intervention. No. 12-cv-3, ECF No. 3. Defendant has moved to dismiss the complaint. Upon consideration of Plaintiff's complaint, Defendant's motion to dismiss, Plaintiff's opposition and Defendant's reply thereto, the relevant case law, and the entire record, the Court hereby **GRANTS** Defendant's motion to dismiss Plaintiff's complaint.

1

I.  BACKGROUND

Dr. Akl is a physician specializing in internal medicine and infectious diseases who is licensed to practice in the District of Columbia, Virginia, and Maryland. Compl. ¶ 6. He practiced medicine at VHC from September 2000, Compl. ¶ 10, to August 3, 2004,[1] when the Hospital revoked his staff appointment, Compl. ¶ 45.

A.  *Akl I*

On November 17, 2004, Dr. Akl filed a complaint against Defendant in a case captioned *Akl v. Virginia Hospital Center Arlington Health System et al.*, Chancery No. 04-722A ("*Akl I*"),[2] in the Arlington County Circuit Court of Virginia. Def.'s MTD, Ex. B at 2. Plaintiff alleged, *inter alia*, that Defendant's termination of his medical staff privileges violated his right to due process, *id.* at 11-14; that Defendant tortiously interfered with his "contractual relationship or business expectancy with the Hospital and his patients," *id.* at 15; that

---

[1] Paragraph 45 of the Complaint states that Plaintiff's staff appointment was revoked on August 3, 2006, but this seems to be a typographical error in light of the sequence of foregoing events, which all occurred in 2004.

[2] The Court will adopt the sequential naming scheme (e.g., "*Akl I*," "*Akl II*") that parties use in their briefing to refer to prior cases. Though only some of Mr. Akl's actions are detailed below, he has filed 12 previous suits in state and federal courts in Maryland, Virginia, and the District of Columbia arising out of his termination. Def.'s MTD at 1-2.

Defendant breached its Medical Credentials Policy, *id.* at 16; and that Defendant defamed him, *id.* at 17.

On April 22, 2005, the sustained the Hospital's demurrer and dismissed Plaintiff's due process and tortious interference with contract claims with prejudice, and his defamation claim without prejudice. *Id.* at 21-22. The court overruled the Hospital's demurrer as to Plaintiff's breach of contract claim. *Id.* Dr. Akl subsequently filed an amended motion for judgment on his remaining claims. *See* Def.'s MTD, Ex. D.

In response to "Plaintiff's claims that the [hospital's] review panel was 'fictitious' or otherwise biased by virtue of conflicts of interest," Def.'s MTD, Ex. D. at 18, the court conducted an *in camera* review of privileged documents regarding Defendant's review process leading up to its decision to revoke Plaintiff's staff appointment. On February 10, 2006, the court found that the documents showed that the review process and investigation were "substantial" and that the evidence directly refuted Dr. Akl's claims to the contrary. *Id.* at 19. Dr. Akl then moved for nonsuit on his remaining claims, which the court granted in an October 2, 2006 order. *Id.* at 28-29. Plaintiff was also ordered to pay Defendant $616,114.41 in attorney's fees and costs. *Id.* at 33.

On April 11, 2007, the Virginia Supreme Court refused Plaintiff's appeal, finding "no reversible error in the judgment

3

complained of." Ex. D at 36. Plaintiff then filed a petition for writ of certiorari contesting the lower court decision with the United States Supreme Court, which was denied on October 1, 2007. Petition for Writ of Certiorari, *Akl v. Virginia Hosp. Ctr.*, 552 U.S. 887 (2007) (No. 07-39), 2007 WL 2000015, at *i; Def.'s MTD, Ex. F at 39.

### B. *Akl V*

Dr. Akl again filed suit in the Arlington County Circuit Court against the Hospital in 2006 in a case captioned *Akl v. Virginia Hospital Center et. al.*, Case No. CL06-633 ("*Akl V*"). Def.'s MTD, Ex. F at 2. In *Akl V*, Plaintiff again challenged the revocation of his medical staff privileges at the Hospital and raised claims of intentional misconduct, *id.* at 24; defamation, *id.* at 26; tortious interference with economic relationships, *id.* at 28; intentional infliction of emotional distress, *id.* at 30; and civil conspiracy, *id.* at 31. In an order dated August 17, 2006, the court granted VHC's demurrer as to all five claims and dismissed the case in its entirety. *Id.* at 33-34. Dr. Akl appealed; the Virginia Supreme Court denied his appeal on December 11, 2006. *Id.* at 37.

### C. *Akl VII*

On January 25, 2007, Dr. Akl filed *Akl v. Va. Hosp. Ctr.* (No. 1:07-cv-73-CMH) ("*Akl VII*") in the United States District Court for the Eastern District of Virginia alleging violations

of due process, Def.'s MTD, Ex. H at 25; equal protection, *id.* at 29; Section 1 of the Sherman Act, *id.* at 30; breach of contract, *id.* at 38; defamation, *id.* at 40; actual fraud, *id.* at 48; aiding and abetting fraud, *id.* at 54; civil conspiracy, *id.* at 55; and tortious interference with economic relationships, *id.* at 57. He requested, *inter alia*, that the court void Defendant's revocation of his staff appointment at the hospital. *Id.* at 63. On July 18, 2007, the court granted Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on all counts. *Id.* at 65.

Plaintiff appealed that decision to the Fourth Circuit on February 26, 2009. Ex. H at 105. On April 16, 2009, the Fourth Circuit issued an order upholding the district court's decision. *Id.* at 106.

### D. The Current Action

On January 3, 2012, Plaintiff filed a sealed complaint against Defendant in this Court. *See* Compl. at 1. Plaintiff alleges that between 2003 and 2010, Defendant certified in its annual cost reports to the Department of Health and Human Services ("HHS") that it had complied with all Medicare conditions of participation, in violation of the FCA. Compl. ¶ 83. Plaintiff contends that as a condition of participating in Medicare, Defendant is required to enforce its own policies under 42 C.F.R. § 482.22(c). Compl. ¶ 85. He argues that

5

Defendant violated these conditions, thus rendering the certifications false, when it knowingly (1) did not investigate Plaintiff's complaints against certain nurses in 2003, and (2) conducted a "fictitious and forged" peer-review of Plaintiff's behavior before revoking his staff appointment with the Hospital in 2004.  Compl. ¶¶ 87-88.  Plaintiff also claims that because the peer-review was conducted improperly, Plaintiff is technically still a member of the hospital staff.  *See* Compl. ¶ 71.  Thus, Plaintiff alleges that in 2004, 2006, and 2010, Defendant falsely reported to the National Practitioner Data Bank of the HHS that Plaintiff's staff appointment had been revoked, in violation of 18 U.S.C. § 1001.  Compl. ¶¶ 67-70.  As a result, Plaintiff argues that each certification of compliance submitted by the Hospital between 2003 and 2010 is false in light of Defendant's alleged failure to abide by its own policies.  Compl. ¶ 89.  Thus, Plaintiff argues that Defendant violated the FCA every time it submitted a Medicare reimbursement claim between 2003 and 2010.  Compl. ¶¶ 95-97.

On July 9, 2012, the United States announced its decision not to intervene in the case.  Notice of Election to Decline Intervention No. 12-cv-3, ECF No. 3.  Following that announcement, the Court unsealed the Complaint and ordered Plaintiff to serve Defendant on July 23, 2012.  *Id.*

6

The Hospital moved to dismiss Plaintiff's complaint on October 2, 2012 on the basis of *res judicata*, the applicable statute of limitations, and failure to state a claim. Def.'s MTD at 3. In support of the motion, Defendant has submitted copies of court records from Dr. Akl's prior state and federal actions that purport to show that his current action is an attempt to relitigate claims that have previously been adjudicated on the merits and decided against him. *See* Def.'s MTD, Ex.'s A-L; *see also* Def.'s Reply, Ex.'s A-B. Defendant's motion is ripe for determination by this Court.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). While detailed factual allegations are not necessary, plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.*

"In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint . . . and

matters of which it may take judicial notice," *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006), including public documents, such as court records, without converting the motion to dismiss into a motion for summary judgment, *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 45 n.19 (D.D.C. 2009). The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences that can be derived from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court need not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION[3]

Defendant argues that Dr. Akl's complaint should be dismissed on the basis of *res judicata* because the allegations upon which he bases his FCA claims arise from the same common nucleus of fact as his prior claims against Defendant, which were dismissed on the merits. Def.'s Reply at 6-7. Dr. Akl counters that *res judicata* is an affirmative defense that is

---

[3] Because the Court finds that Dr. Akl's claims should be dismissed because they are barred by *res judicata*, it does not reach Defendant's other grounds for dismissal.

8

generally raised in a motion to dismiss,[4] and that his FCA claims could not have been litigated earlier, because they arise in part from events that occurred after Plaintiff filed his earlier cases against Defendant. Pl.'s Opp. at 4-8.

"Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (internal citations and quotation marks omitted). *Res judicata* does not only bar claims that were brought in a finally adjudicated suit; it also "forecloses all that which *might have been* litigated previously." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg.*, 723 F.2d 944, 949 (D.C. Cir. 1983); *see also U.S. ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 77-78 (D.D.C. 2011) (finding that a 12(b)(6) dismissal of plaintiff's *qui tam*

---

[4] This argument is devoid of merit. Although *res judicata* is an affirmative defense that is generally pleaded in a defendant's answer, courts have also allowed parties to assert it in a Rule 12(b)(6) motion to dismiss. *See Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997) (citing cases). "*Res judicata* may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim when the defense appears on the face of the complaint and any materials of which the court may take judicial notice." *Koker v. Arora Loan Serv.*, 915 F. Supp. 2d 51, 58 (D.D.C. 2013).

suit precluded his second *qui tam* suit against the same defendant because he could have easily brought the second suit in his first one).

The only issue seriously in dispute in the instant action is whether there is a common identity of causes of action in this case and Dr. Akl's prior lawsuits. Whether two cases involve the same cause of action turns on "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (internal citations omitted). "There is an identity of causes of action when the cases are based on 'the same nucleus of facts,' because 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" *Folliard*, 798 F. Supp. 2d at 77 (citing *Page v. U.S.*, 729 F.2d 818, 820 (D.C. Cir. 1984)).

Based on a comparison of the complaints filed in this case and in *Akl I*, *Akl V*, and *Akl VII*, the Court finds that Plaintiff's FCA claims here share a common factual predicate: the allegedly fictitious peer-review process and subsequent revocation of Plaintiff's staff appointment at the Hospital. The Complaint here and the complaints in *Akl I*, *Akl V*, and *Akl*

*VII* each allege that in 2000, Plaintiff obtained staff privileges to practice at the Virginia Hospital Center in Arlington, Virginia, *see* Compl. ¶ 10; Def.'s MTD, Ex. B at 5 (¶ 13) (*Akl I*); Def.'s MTD, Ex. F at 9 (¶ 34) (*Akl V*); Def.'s MTD, Ex. H at 7 (¶ 25) (*Akl VII*); and that a Medical Staff Credentials Policy governed the procedure by which staff appointments were peer reviewed, *see* Compl. ¶ 11; Def.'s MTD, Ex. B at 5 (¶ 14); Def.'s MTD, Ex. F at 9 (¶ 35); Def.'s MTD, Ex. H at 7 (¶ 26). Moreover, each complaint alleges a forged, fictitious, or improper peer review process leading up to the revocation of Plaintiff's staff appointment, *see* Compl. ¶ 35-38, 43-44, 46-47; Def.'s MTD, Ex. B at 9-10 (¶¶ 42-50); Def.'s MTD, Ex. F at 16-23 (¶¶ 88-107); Def.'s MTD, Ex. H at 17-21 (¶ 93), and that Defendant failed to abide by its own Policy in conducting a peer review of Plaintiff's staff appointment, *see* Compl. ¶ 47; Def.'s MTD, Ex. B at 16 (¶ 92); Def.'s MTD, Ex. F at 18-22 (¶ 103); Def.'s MTD, Ex. H at 17-21 (¶ 93). In each complaint, Dr. Akl alleges that he was denied adequate opportunity to defend himself. *See* Compl. ¶¶ 47, 53, 61; Def.'s MTD, Ex. B at 11 (¶¶ 57-58); Def.'s MTD, Ex. F at 18-22 (¶ 103); Def.'s MTD, Ex. H at 17-21 (¶ 93). Finally, Dr. Akl alleges in each complaint that Defendant filed false reports with the National Practitioner Data Bank regarding Plaintiff's behavior. *See* Compl. ¶ 67; Def.'s MTD, Ex. B at 17 (¶ 98); Def.'s MTD, Ex.

F at 28 (¶ 134); Def.'s MTD, Ex H at 41 (¶ 225).  Because Plaintiff's FCA claims here arise from a set of alleged facts that are "related in time, space, origin, [and] motivation," *Apotex*, 393 F.3d at 217, to those that Plaintiff alleged in three prior lawsuits against Defendant, the Court finds that all four cases share the same cause of action.

Plaintiff's argument that his FCA claims arise in part from facts that had not occurred by the time he had filed his earlier lawsuits also fails.  In *Folliard*, this Court barred a second suit by a plaintiff-relator when "a brief perusal of relator's complaints reveal[ed] that he had all of the information he needed to bring both suits at the time he brought the first." 798 F. Supp. 2d at 78.  The same is true here.  Dr. Akl alleges that Defendant falsely reaffirmed the accuracy of false reports that it filed prior to 2007 in 2010, *see* Compl. ¶¶ 67-69, and that doing so was, by itself, a false statement, Compl. ¶ 70. The only way that Defendant's 2010 statement could have been false is if the earlier reports to which it referred were also false.  Plaintiff had alleged the existence of these pre-2007 reports in his complaint in *Akl VII*.  Def.s' MTD, Ex. H at 41 (¶ 225).  Therefore, like the relator-plaintiff in *Folliard*, when Plaintiff filed *Akl VII* in 2007, he already had all of the information he needed to bring an FCA claim.

**IV. CONCLUSION**

Dr. Akl has already had numerous opportunities to present his claims arising out of his termination from Virginia Hospital Center in state and federal court. That he has never before brought claims under the False Claims Act does not save the present action because he was required to bring in a single suit all claims arising from the termination of his staff privileges. *U.S. Indus. v. Blake Constr. Co.*, 765 F.2d 195, 203 (D.C. Cir. 1985). Dr. Akl's claims are thus barred by *res judicata*. The Court will therefore **GRANT** Defendant's motion to dismiss and hereby **DISMISS** Plaintiff's complaint with prejudice. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**SIGNED:   Emmet G. Sullivan**
            **United States District Court Judge**
            **September 16, 2013**